Filed 1/8/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| VENTURA FOOTHILL NEIGHBORS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>COUNTY OF VENTURA et al.,<br><br>    Defendants and Appellants. | 2d Civil No. B254120<br>(Super. Ct. No. 56-2008-00323043-CU-PT-OXN))<br>(Ventura County)<br>MODIFICATION OF OPINION<br>ON DENIAL OF REHEARING<br>[No Change in Judgment] |

THE COURT:

The opinion filed herein on December 15, 2014 is modified as follows:

1  On page 1, third line from the bottom, delete the sentence beginning with the word "when" and ending with the word "affirmed." and insert therein the following:

when it increased the height of a building in violation of the California Environmental Quality Act (CEQA).  The trial court's ruling requiring a supplemental environmental impact report (EIR), must be affirmed.

2.  On page 2, line 8 delete the word "the" appearing after "EIR."

3.  On page 2, line 10 delete the word "change" and insert the word "increase."

4. On page 4 make the last paragraph a part of the paragraph ending with the word "mandate."

The petition for rehearing is denied

No Change in Judgment.

CERTIFIED FOR PUBLICATION

Filed 12/15/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| VENTURA FOOTHILL NEIGHBORS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>COUNTY OF VENTURA et al.,<br><br>    Defendants and Appellants. | 2d Civil No. B254120<br><br>(Super. Ct. No. 56-2008-00323043-CU-PT-OXN)<br><br>(Ventura County) |

As Oliver Wendell Holmes said: "Men must turn square corners when they deal with the Government." (*Rock Island A. & L.R. Co. v. United States* (1920) 254 U.S. 141, 143; 65 L.Ed. 188, 189.) Our own California Supreme Court remarked: " 'It is hard to see why the government should not be held to a like standard of rectangular rectitude when dealing with its citizens.' [Citation.]" (*Farrell v. County of Placer* (1944) 23 Cal.2d 624, 628; see also *Title Ins. Co. v. State Board of Equalization* (1992) 4 Cal.4th 715, 730.) Here the trial court essentially ruled that the government had not turned a square corner in dealing with some of its citizens - adjacent property owners - when it increased the height of a building in violation of the spirit, if not the letter, of the California Environmental Quality Act (CEQA). The trial court's ruling, requiring (EIR), must be affirmed.

The County of Ventura (County), its Board of Supervisors (Board), and two County agencies appeal from a judgment granting a peremptory writ of mandate in favor of Ventura Foothill Neighbors, respondent. Respondent's members reside near a building that the County recently constructed in the City of Ventura. The peremptory writ of mandate requires the County to prepare a supplemental EIR for the completed building. The original EIR was for a building with a maximum height of 75 feet at a specified location. County constructed a 90 foot high building at a different location. Instead of filing a supplemental EIR, the County filed an EIR addendum that considered the environmental impact of the change in location but did not mention the change in the building's height.

Appellants contend that County acted within its discretion in proceeding by way of an addendum instead of a supplemental EIR. They also contend that respondent's action is barred by a 30-day statute of limitations. These contentions are without merit.

*Factual and Procedural Background*

In 1993 Board decided to construct a five-story ambulatory care clinic (the Clinic) on the 40-acre campus of the Ventura County Medical Center in the City of Ventura. The 1993 EIR stated that "[t]he building would be up to 75 feet in height." The EIR included drawings of the proposed building that did not show its height.

In January 1994 Board certified the EIR and approved the project. It filed a Notice of Determination (NOD) stating that County would construct an "Ambulatory Care Clinic." The NOD mentioned nothing about the building's height.

In June 1994 detailed plans for the Clinic were prepared. The plans showed that the height to the roofline would be 72 feet. Parapets, additional walls on the roof, increased the height to 88.5 feet.

County delayed constructing the Clinic until May 2005 when Board decided that Clinic should be "relocated from its original orientation to reduce the environmental impact of the Project and to more centrally locate the Project around

2

parking assets." The Clinic would be moved "approximately 200 feet north and 160 feet west of the original location." The relocated building would "be about 5 feet lower in elevation due to the topography at the revised location."

For the relocated building, Board prepared an "Addendum" to the EIR. Board concluded "that no subsequent or supplemental Environmental Impact Report is required." The addendum observed: "The relocation of the proposed Clinic has slightly less impact on resident[s]' view-shed over the originally approved project because it is farther away from these residences and the proposed relocated Clinic is at a site where the existing topography is about 5 feet lower than the approved location." "Since the proposed relocated Clinic is virtually the same size and configuration as the original component, the land use impacts of the proposed relocated Clinic for height and view shed is less than and within the scope of the analysis of land use impacts in the [EIR]." The addendum did not say that the height of the Clinic would exceed the maximum of 75 feet specified in the EIR.

Board approved the 1994 plans and specifications for the Clinic and "authorize[d] and direct[ed] the Director of the Public Works Agency to update these plans and specifications to current applicable building codes." On May 25, 2005, County filed a NOD stating that the project would be changed by relocating the Clinic. The NOD did not mention the building's height. In 2007 the plans for the Clinic were modified to show that the height of the building would be 90 feet, including parapets on the roof.

It was not until May 22, 2008, that respondent's members were informed that the height of the relocated Clinic would be 90 feet. On that date John Brooks, who lived nearby, saw an "auger rig" at the construction site. He went to the construction office and "asked what the equipment was for and what they were building." He was shocked to learn that the equipment was going to be used to construct a 90-foot high building. Brooks told Jacqueline Moran, a founding member of respondent.

3

On July 17, 2008, respondent filed a petition for a writ of mandate. The petition sought to set aside Board's approval of the construction of the relocated Clinic and require Board "to refrain from further consideration of approval pending certification of an adequate supplemental EIR."

In August 2008 the trial court denied respondent's motion for a preliminary injunction halting construction of the Clinic. In support of the motion, Ms. Moran declared: "[The relocated Clinic is] in the foothills of Ventura, bordered on three sides by a very well-established neighborhood of single family residen[ces] . . . ." In its original location, "the aesthetic impacts of the Clinic building would have been confined primarily to Agnus Street. [¶] . . . [¶] [T]he 75-foot structure was 15 feet below the grade of Foothill [Road] and did not impact the superior ocean views of homes on that street. In the new location, the 90-foot structure would stand well above the grade of Foothill and so would significantly diminish the superior ocean view setting of those Foothill residences. Further, by moving the Clinic further north on the campus property, the building will significantly impact the aesthetics and superior views of the Agnus Street, Lynn Drive and Fairmont Drive residents . . . ." In addition, the building "will significantly interrupt . . . hillside views" from residences on Estrella Street. "There are approximately 84 homes that will be significantly and negatively impacted for their aesthetics by this building should it go forward." The trial court weighed the competing considerations and determined that it would be unwise and inequitable to cease on-going construction. In October 2010 the construction of the Clinic was completed.

## Trial Court's Decision

In January 2014 the trial court issued a well-written and comprehensive 11-page order granting a peremptory writ of mandate.

This, of course, is of great assistance to the Court of Appeal and we commend the trial court for doing so, The trial court noted that both parties had stipulated that "the county's medical building façade was fully constructed to a height of 90 feet."

Respondent "conceded . . . that recent CEQA case law now conclusively bars its claim as to relocation of the medical building, since the May 24, 2005 notice of determination on the addendum had expressly included 'Relocation of replacement Clinic building.' "  On the other hand, respondent contended that it is not barred from claiming "that it is a violation of CEQA for the county to advise the public in the EIR that it was studying and proposed to build a medical building '*up to* 75 feet in height'; and then to construct a building that is 90 feet high across its entire east-west dimension."

The trial court ruled that respondent's petition was not time-barred because "it cannot reasonably be said that [respondent's members] reasonably knew or should have known that the building was going to be 90 feet high until the 90-foot auger rig was in place in [May] 2008 to build the clinic."  The court concluded that the 20 percent increase in the building's height, from a maximum of 75 feet to 90 feet, was a "material discrepancy" and "a violation of CEQA."  The court continued: "[T]here were 'substantial changes' as far as the general public and any reasonable reader of the EIR [were] concerned . . . .  [M]ajor revisions [of the EIR] *are* required since the entire building height/view-shed analysis in the 1993 EIR was gauged and analyzed for a [75-foot high] building in a materially different location.  [¶]  Accordingly, the appropriate protocol is to have the county draft and recirculate a *focused* supplemental EIR, limited solely to analysis of height and profile-related impacts of the medical clinic, *as built* and *where built* to a height of ninety feet.  Since it is *not* a reasonable mitigation measure to reduce the size or height of the new medical clinic as constructed, assuming a finding of significant impacts at the revised 90 foot height in the new location, the county is obligated to consider other forms of mitigation in an effort to reduce significant impacts to levels of insignificance."

*Standard of Review*

"In CEQA cases, as in other mandamus cases, 'we independently review the administrative record under the same standard of review that governs the trial court.'

5

[Citations.] We review an agency's determinations and decisions for abuse of discretion. An agency abuses its discretion when it fails to proceed in a manner required by law or there is not substantial evidence to support its determination or decision. [Citations.]" (*Preserve Wild Santee v. City of Santee* (2012) 210 Cal.App.4th 260, 275.)

"Where [as here] the pertinent facts are undisputed, it is a question of law whether a case is barred by the statute of limitations. Accordingly, we apply the de novo standard of review [to this issue]. [Citation.]" (*Arcadia Development Co. v. City of Morgan Hill* (2008) 169 Cal.App.4th 253, 260-261.)

*CEQA Addendum and 30-Day Limitation Period*

Appellants claim that in its petition respondent challenged the adequacy of the 1993 EIR. Appellants maintain that this challenge is time-barred because "[t]he statute of limitations . . . expired 30 days after" County filed the January 1994 NOD, which stated: "An Environmental Impact report was prepared and certified for this project pursuant to the provisions of CEQA." Respondent, on the other hand, correctly contends that it did "*not* 'challenge the [1993] EIR' as County claims." Instead, it challenged "the County's failure to prepare a supplemental EIR for a 90-foot Clinic building." Respondent frames the issue as follows: "Did the County abuse its discretion and fail to proceed in the manner required by law in approving the revised . . . Clinic based on an addendum to the 1993 EIR rather than preparing a supplement to the EIR to analyze and mitigate new impacts?"

"CEQA does not require an EIR to be prepared for every step taken in the course of a project. Once a proper EIR has been prepared, no subsequent or supplemental EIR is required unless (1) '[s]ubstantial changes' are proposed in the project, requiring 'major revisions' in the EIR; (2) substantial changes arise in the circumstances of the project's undertaking, requiring major revisions in the EIR; or (3) new information appears that was not known or available at the time the EIR was

6

certified.  [Citations.]"  (*Committee For Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 54-55.)

CEQA statutes do not mention an EIR addendum.  But section 15164 of the CEQA Guidelines (Cal.Code Regs., tit. 14, § 15000 et seq.) provides: "The lead agency or a responsible agency shall prepare an addendum to a previously certified EIR if some changes or additions are necessary but none of the conditions described in [Guidelines] Section 15162 calling for preparation of a subsequent EIR have occurred."  (*Id*., subd. (a).)  "An addendum need not be circulated for public review . . . ."  (*Id*., subd. (c).)  A leading treatise on property law explains: "When there are changes in a project after the certification of a Final Report, the agency can prepare an Addendum to the Report if the changes do not substantially modify the analysis in the original Report.  The Addendum is acceptable, rather than a new or Supplemental EIR, when there are only minor technical changes or additions which do not raise important new issues about the significant effects on the environment."  (9 Miller & Starr, Cal. Real Estate (3d ed. 2011), § 25A:19, p. 25A-107, fns. omitted.)

Appellants assert that County acted within its discretion by preparing an EIR addendum instead of a supplemental EIR.  They argue: "The Addendum explained why relocation of the Clinic building would not result in any new or more severe significant impacts than were described in the EIR, and concluded that preparation of a subsequent or supplemental EIR was therefore not required."  This conclusory argument, which is addressed only to the relocation of the building, is insufficient to overcome the judgment's presumption of correctness.  (See *Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649-650 ["An appealed judgment is presumed correct, and appellant bears the burden of overcoming the presumption of correctness"].)  The addendum said nothing about the increase in height from a maximum of 75 feet to 90 feet.  We agree with the trial court that the increase in height effected " '[s]ubstantial changes' . . . in the project, requiring 'major revisions' in the EIR."  (*Committee For Green Foothills v. Santa Clara County Bd. of Supervisors*,

7

*supra*, 48 Cal.4th at p. 54.)  Thus, County abused its discretion in not preparing a supplemental EIR.

Appellants argue that respondent is time-barred from challenging County's decision to proceed by way of an EIR addendum.  Appellants claim that the statute of limitations expired 30 days after May 25, 2005, when the County filed the NOD for the relocation of the Clinic.  Public Resources Code section 21167, subdivision (e) requires that " '[a]n action or proceeding alleging that [an] act or omission of a public agency does not comply with' CEQA . . . be brought within 30 days after the filing of the NOD."  (*Committee For Green Foothills v. Santa Clara County Bd. of Supervisors*, *supra*, 48 Cal.4th at p. 57.)

At oral argument appellants' counsel said that even if County had doubled the height of the Clinic, once the 30-day period elapsed any challenge to its action would still be time-barred.  This is nonsense.  We agree with the trial court that the 30-day statute of limitations is inapplicable because County did not provide notice to the public of the increase in the Clinic's height.  "[T]he filing of an NOD triggers a 30–day statute of limitations for all CEQA challenges to *the decision announced in the notice*."  (*Committee For Green Foothills v. Santa Clara County Bd. of Supervisors*, *supra*, 48 Cal.4th at p. 39, italics added.)  The decision announced in the notice was the "[r]elocation of replacement Clinic building."

Neither the NOD nor the EIR addendum mentioned anything about a change in the building's height.  Because both the NOD and addendum were silent on this issue, a 180-day statute of limitations began to run from May 22, 2008, when respondent's members were informed that the Clinic was going to be 90 feet high.  "[I]f the agency makes substantial changes in a project after the filing of the EIR and fails to file a later EIR in violation of section 21166, subdivision (a), an action challenging the agency's noncompliance with CEQA may be filed within 180 days of the time the plaintiff knew or reasonably should have known that the project under way differs substantially from the one described in the EIR."  (*Concerned Citizens of Costa Mesa, Inc. v. 32nd*

*Dist. Agricultural Assn.* (1986) 42 Cal.3d 929, 939.)  Respondent's petition for a writ of mandate was filed within the 180-day period.

## Disposition

The trial court's effort to require the government to "turn square corners" with its citizens is to be applauded.

The judgment is affirmed.  Respondents to recover costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

`                                            YEGAN, J.

We concur:


        GILBERT, P. J.


        BURKE, J.[*]

---

[*] Assigned by the Chairperson of the Judicial Council.

Glen M. Reiser, Judge

Superior Court County of Ventura

_____

Stephen L. Kostka and Julie Jones.  Leroy Smith and Jeffrey E. Barnes, Ventura County Counsel for Defendants and Appellants.

Susan Brandt; Brandt-Hawley Law Group for Plaintiff and Respondent.