Filed 10/24/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAVE OUR HERITAGE ORGANISATION,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>CITY OF SAN DIEGO et al.,<br><br>　　Defendants and Respondents;<br><br>THE PLAZA DE PANAMA COMMITTEE,<br><br>　　Real Party in Interest and Respondent. | D073064<br><br><br>(Super. Ct. No. 37-2016-00045022-CU-TT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County,

Gregory W. Pollack, Judge.  Affirmed.

Brandt-Hawley Law Group and Susan Brandt-Hawley for Plaintiff and Appellant.

Mara W. Elliott, City Attorney, and Heidi Vonblum, Deputy City Attorney, for

Defendants and Respondents, City of San Diego et al.

Seltzer Caplan McMahon Vitek and G. Scott Williams for Real Party in Interest

and Respondent, Plaza de Panama Committee.

# I

## INTRODUCTION

Save Our Heritage Organisation (SOHO) appeals from a judgment denying its petition for writ of mandamus challenging the approval by the City of San Diego (City) of an environmental impact report (EIR) addendum for revisions to the Plaza de Panama project (project) at Balboa Park.  SOHO contends we must reverse the judgment because the City's approval of the addendum violated the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.)[1] in two respects.  First, SOHO contends CEQA Guidelines section 15164 (Guideline 15164),[2] which authorizes the addendum process utilized by the City, is invalid because CEQA contains no authority for the addendum process and the addendum process conflicts with CEQA's public review requirements. Second, SOHO contends the City approved the project revisions without making new findings under section 21081.

We conclude SOHO has not met its burden of establishing the addendum process is invalid.  We further conclude the City was not required to make findings under section 21081.  We, therefore, affirm the judgment.

---

[1]     Further statutory references are to the Public Resources Code unless otherwise stated.

[2]     The CEQA Guidelines (Guidelines; Cal. Code Regs., tit. 14, § 15000 et seq.) are promulgated by the state's Natural Resources Agency (Resources Agency) for the implementation of CEQA by public agencies.  (§ 21083; *Center for Biological Diversity v. Department of Fish & Wildlife* (2015) 62 Cal.4th 204, 217, fn. 4.)  Further Guideline references are to the CEQA Guidelines.

II

BACKGROUND

This case has a lengthy record and litigation history. We summarize only the facts and history relevant to an understanding of the issues on appeal.

A

Balboa Park is a large urban park in San Diego. Included within Balboa Park's Central Mesa are the buildings and plazas designed and constructed for the 1915 Panama-California Exposition and the adjoining buildings and improvements later constructed for the 1935 California Pacific International Exposition. From the west, visitors access Balboa Park's Central Mesa by the Cabrillo Bridge. Most of Balboa Park's Central Mesa is a National Historic Landmark District and the Cabrillo Bridge is a National Historical Landmark. (*Save Our Heritage Organisation v. City of San Diego* (2015) 237 Cal.App.4th 163, 168 (*SOHO I*).)

B

The City approved the project in 2012. The purpose of the project was to restore pedestrian and park uses to Balboa Park's Central Mesa and to alleviate vehicle and pedestrian conflicts. As described in the administrative record, the project "proposes to remove vehicular access and parking from the Plaza de Panama, El Prado, Plaza de California, the Mall, and Pan American Road East and allow these areas to be used by pedestrians only. A new bridge, 'Centennial Bridge,' would connect the eastern end of Cabrillo Bridge to the western side of the Alcazar parking lot. From that point a new 'Centennial Road' would traverse through the Alcazar parking lot exiting to the east,

3

continue to the south past a new Organ Pavilion [underground] parking structure and then connect to Presidents Way. Additional parkland would be provided atop the new parking structure. A tram would provide service from the parking structure to the Plaza de Panama with possible expansion to serve other areas of the Park. Excavation activities required for construction of the underground parking structure would require that the project dispose of excess soils within the inactive Arizona Street Landfill."

SOHO opposed the project and filed a petition for writ of mandamus challenging the project on multiple grounds related to the project's effects on the environment, historical resources, and land use. The superior court granted the petition on some of the asserted grounds and entered a judgment directing the City to rescind the project approval. Real party in interest, The Plaza de Panama Committee (Committee), which was spearheading the project, and SOHO each appealed aspects of the judgment. We reversed the judgment, ultimately concluding the City had not abused its discretion in approving the project. (*SOHO I*, *supra*, 237 Cal.App.4th at pp. 168–169, 172, 188, 192.)

The Committee subsequently filed a motion seeking an award of attorney fees under Code of Civil Procedure section 1021.5. The superior court entered an order denying the motion and we affirmed the order on appeal. (*Save Our Heritage Organisation v. City of San Diego* (2017) 11 Cal.App.5th 154, 157–158 (*SOHO II*).)

C

While the appeals were pending, several physical changes to the project's environmental setting occurred. The City removed all parking spaces, signage, wheel stops and plants from the Plaza de Panama and reconfigured traffic to allow for nearby

4

tram, bus, and valet drop off. The City then resurfaced the Plaza de Panama and added planters, benches, umbrella tables, and chairs. The City added 27 accessible parking spaces to the Organ Pavilion parking lot, created a tram service yard, and replaced existing trams with new trams capable of moving 50 to 100 people at a time. The City also completed maintenance on the wooden deck on the east end of the Palm Canyon pedestrian bridge and reconstructed the north portion of the Alcazar parking lot to comply with the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.) by adding 14 accessible parking spaces and a path of travel through the Alcazar Garden.

Unrelated to the project, but within the Central Mesa, the San Diego Zoological Society (Zoo) constructed a 600-space parking structure with accompanying pedestrian and ADA parking improvements. The parking structure is only for use by Zoo employees, but the Zoo has an agreement with the Old Globe Theater allowing the theater's patrons to use the structure after 6:00 p.m. for a fee.

D

In 2016, the City adopted an addendum to the EIR addressing several modifications to the project.[3] The modifications included: (1) changing and reducing the number of the supports for the Centennial Bridge to comply with current California

---

[3]    Contemporaneously, the City made decisions about the Committee's role in and the financing for the project. These decisions are the subject of a separate action. (See *San Diegans for Open Government v. Public Facilities Financing Authority of the City of San Diego et al.* (D072562, Apr. 26, 2018) [nonpub. opn.].)

Department of Transportation requirements; (2) redesigning and adding storm water basins to comply with current City storm water standards; (3) adding ventilation to the subterranean parking structure to comply with changes to the California Building Code; (4) increasing the elevation of the Arizona Street Landfill site because of soil added to the site after the project's initial approval; (5) making energy efficiency upgrades required by the revised Building Energy Efficiency Standards and California Green Building Standards; (5) increasing the construction phasing plan schedule by two months; and (6) refining the construction design to reduce the project's cost by $4 million. Completion of the modified project will result in 353 additional parking spaces, or 93 more spaces than contemplated by the original project.

The addendum reviewed the potential environmental effects of the project modifications on land use, historical resources, visual effects and neighborhood character, transportation circulation and parking, air quality, biological resources, energy conservation, geologic conditions, greenhouse gas emissions, health and safety and hazardous materials, hydrology and water quality, noise, paleontological resources, public services and facilities, and public utilities. The addendum concluded:

1.     There were no substantial changes to the project requiring major revisions to the EIR because of new or substantially increased significant environmental effects;

2.     There were no substantial changes in circumstances requiring major revisions to the EIR because of new or substantially increased significant environmental effects;

6

3.     There was no new, previously unknown or unknowable, information of substantial importance showing:  (a) the project will have significant effects not discussed in the EIR; (b) the project will have substantially more severe significant effects than shown in the EIR; (c) previously infeasible mitigation measures and project alternatives are now feasible and would substantially reduce significant environment effects; or (d) considerably different mitigation measures than analyzed in the EIR would substantially reduce significant environmental effects.  The City incorporated these findings into its resolution adopting the addendum.

III

DISCUSSION

"In a CEQA case, as in other mandamus cases, our review of the administrative record for error is the same as the trial court's; we review the agency's action, not the trial court's decision."  (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 381.)  Our review of the City's action requires us to consider whether the City abused its discretion either (1) by failing to proceed in the manner required by law, or (2) by making a factual conclusion unsupported by substantial evidence.  (§§ 21168, 21168.5; *Save Tara v. City of West Hollywood* (2008) 45 Cal.4th 116, 131.)  We determine de novo whether the City failed to proceed in the manner required by law while we accord greater deference to the City's factual conclusions.  (*Ibid*.)

A

SOHO contends the City failed to proceed in the manner required by law because Guideline 15164, which authorizes the addendum process utilized by the City, is invalid.

7

Guideline 15164 provides: "(a) The lead agency or a responsible agency shall prepare an addendum to a previously certified EIR if some changes or additions are necessary but none of the conditions described in [Guideline] 15162 calling for preparation of a subsequent EIR have occurred. [¶] ... [¶] (c) An addendum need not be circulated for public review but can be included in or attached to the final EIR ... . [¶] (d) The decision-making body shall consider the addendum with the final EIR ... prior to making a decision on the project. [¶] (e) A brief explanation of the decision not to prepare a subsequent EIR pursuant to [Guideline] 15162 should be included in an addendum to an EIR, the lead agency's required findings on the project, or elsewhere in the record. The explanation must be supported by substantial evidence."

The Resources Agency's discussion of Guideline 15164 states it was "designed to provide clear authority for an addendum as a way of making minor corrections in EIRs ... without recirculating the EIR ... ."[4] The Resources Agency's statement of reasons for initially adopting Guideline 15164 states, "The concept of an addendum to an EIR is new in the CEQA [G]uidelines, although such a device has been used by many agencies previously. This section is designed to provide clear authority for the practice and to encourage other agencies to use the device as a way of making minor corrections in EIRs

---

[4]     The Resources Agency adopted discussions together with the Guidelines to explain the Guidelines. (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 849, fn. 8.) "Although the discussions are not part of the California Code of Regulations, they may assist courts in construing CEQA and the Guidelines." (*Ibid.*)

without recirculating the EIR. The addendum is the other side of the coin from the supplement to an EIR. This section provides an interpretation with a label and an explanation of the kind of document that does not need additional public review. The need for this section was shown by the many telephone calls received in the Resources Agency asking how to handle this situation." (Cal. Natural Resources Agency, Amendments to the State CEQA Guidelines, Text of Adopted Amendments with Statement of Reasons (Dec. 30, 1982), pp.100–101.)

Guideline 15164, "like any agency action, comes to the court with a presumption of validity." (*Association of California Ins. Companies v. Jones* (2017) 2 Cal.5th 376, 389 (*Jones*).) SOHO, as the party attacking the Guideline, has the burden of demonstrating its invalidity. (*Benton v. Board of Supervisors* (1991) 226 Cal.App.3d 1467, 1478, disapproved on another point in *Friends of College of San Mateo Gardens v. San Mateo County Community College Dist.* (2016) 1 Cal.5th 937, 958, fn. 6 (*Friends*).)

2

In reviewing the validity of Guideline 15164, we consider whether the Guideline is (1) consistent and not in conflict with CEQA, and (2) reasonably necessary to effectuate the purpose of CEQA. (Gov. Code, § 11342.2; *Jones*, *supra*, 2 Cal.5th at p. 396; *Communities for a Better Environment v. California Resources Agency* (2002) 103 Cal.App.4th 98, 108, disapproved on another point in *Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1109, fn. 3.) The analysis of these questions depends on whether the Guideline is a quasi-legislative rule or an interpretive rule. (*Jones*, at p. 396.)

"Quasi-legislative rules represent 'an authentic form of substantive lawmaking' in which the Legislature has delegated to the agency a portion of its lawmaking power. [Citations.] Because such rules 'have the dignity of statutes,' a court's review of their validity is narrow: 'If satisfied that the rule in question lay within the lawmaking authority delegated by the Legislature, and that it is reasonably necessary to implement the purpose of the statute, judicial review is at an end.' " (*Jones*, *supra*, 2 Cal.5th at pp. 396–397.)

Interpretive rules are devoid of quasi-legislative authority and instead represent the agency's understanding of a statute's meaning and effect. Interpretive rules are consequential, but they are not an exercise of delegated lawmaking power. (*Jones*, *supra*, 2 Cal.5th at p. 397.) "A court reviewing the validity of an interpretive rule therefore must consider more than simply whether the rule is within the scope of the authority conferred, and whether the rule is reasonably necessary to effectuate the statute's purpose. Rather, a court must also consider whether the administrative interpretation is a proper construction of the statute. [Citations.] In answering the latter question, the standard of review ' "is one in which the judiciary, although taking ultimate responsibility for the construction of the statute, accords great weight and respect to the administrative construction." ' [Citation.] While the agency's position therefore matters a great deal, its interpretation does not carry with it the dignity of statutes." (*Ibid.*)

Some rules defy easy categorization and may have both quasi-legislative and interpretive characteristics. (*Jones*, *supra*, 2 Cal.5th at p. 397.) The California Supreme Court has not decided whether the Guidelines are quasi-legislative rules or interpretive

10

rules. (*Friends, supra*, 1 Cal.5th at p. 954.) We need not categorize the Guidelines generally or Guideline 15164 specifically to resolve this appeal. Even if Guideline 15164 is purely interpretative, we conclude SOHO has not established its invalidity.

3

The Resources Agency promulgated Guideline 15164, among others, to implement section 21166. Section 21166 provides: "When an environmental impact report has been prepared for a project ..., no subsequent or supplemental environmental impact report shall be required ... unless one or more of the following events occurs: [¶] (a) Substantial changes are proposed in the project which will require major revisions of the environmental impact report. [¶] (b) Substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions in the environmental impact report. [¶] (c) New information, which was not known and could not have been known at the time the environmental impact report was certified as complete, becomes available." The project changes, changed circumstances, and new information referred to in section 21166 only require a subsequent EIR if they involve new significant environmental effects, substantially more severe significant environmental effects, or newly feasible or different mitigation measures which would substantially reduce one or more significant environment effects. (Guideline 15162, subd. (a).)

Section 21166 effectively creates a presumption against further environmental review after a project has been previously subjected to environmental review. (*Moss v. County of Humbolt* (2008) 162 Cal.App.4th 1041, 1049; see § 21167.2; *Friends*, *supra,*1

11

Cal.5th at p. 956 [EIRs are entitled to a presumption of finality once adopted].)

" '[S]ection 21166 comes into play precisely because in-depth review has already occurred, the time for challenging the sufficiency of the original EIR has long since expired [citation], and the question is whether circumstances have *changed* enough to justify *repeating* a substantial portion of the process.' " (*Moss*, *supra*, 162 Cal.App.4th at p. 1050.) Section 21166 " 'restrict[s] the powers of agencies "by prohibiting [them] from requiring a subsequent or supplemental environmental impact report" unless the stated conditions are met.' " (*Moss*, at p. 1050.)

Although section 21166 does not expressly authorize the addendum process prescribed in Guideline 15164, the addendum process fills a gap in CEQA for projects with a previously certified EIR requiring revisions that do not warrant the preparation of subsequent EIRs. (See *Ventura Foothill Neighbors v. County of Ventura* (2014) 232 Cal.App.4th 429, 435.) "CEQA authorizes the Resources Agency to fill such gaps in the statutory scheme, so long as it does so in a manner consistent with the statute." (*Friends*, *supra*, 1 Cal.5th at p. 956.)

Guideline 15164 is consistent with and furthers the objectives of section 21166 by requiring an agency to substantiate its reasons for determining why project revisions do not necessitate further environmental review. (Guideline 15164, subd. (e) [an agency should include a brief explanation of its decision not to prepare a subsequent EIR in an addendum to the EIR, in its required findings on the project, or elsewhere in the record]; *Bowman v. City of Petaluma* (1986) 185 Cal.App.3d 1065, 1081–1082 [using an addendum to determine whether further environmental review is necessary is an

12

appropriate way to fill a procedural gap in CEQA and the Guidelines]; see *American Canyon Community United for Responsible Growth v. City of American Canyon* (2006) 145 Cal.App.4th 1062, 1083; 1 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2018) § 19.42.)  If the agency's reasons are not supported by substantial evidence, a project opponent could challenge and a court could set aside the agency's determination.  (Guideline 15164, subd. (e) [an agency's explanation of its decision not to prepare a subsequent EIR must be supported by substantial evidence]; see *Friends*, *supra*, 1 Cal.5th at p. 953 [a court reviews an agency's determination about whether an initial environmental document requires major revisions for substantial evidence].)

Conversely, initiating further environmental review "every time plans or circumstances change, or whenever new information comes to light—'would render agency decisionmaking intractable, always awaiting updated information only to find the new information outdated by the time a decision is made.' "  (*Friends*, *supra*, 1 Cal.5th at p. 956.)  Thus, the addendum process reasonably implements section 21166's objective of balancing the consideration of environmental consequences in public decision making with interests in finality and efficiency.  (See *Friends*, at p. 949.)

The absence of a public review process for addendums comparable to initial or subsequent EIRs does not render Guideline 15164 inconsistent with CEQA.  Rather, the absence of public review reflects the nature of an addendum as a document describing project revisions too insubstantial in their effect to require subsequent environmental review.  The absence of public review also reflects the finality of adopted EIRs and

13

section 21166's proscription against further environmental review except in specified circumstances. Once an EIR has been certified, "the interests of finality are favored over the policy of encouraging public comment." (*Laurel Heights Improvement Assn. v. Regents of University of California* (1993) 6 Cal.4th 1112, 1130.) Moreover, the absence of public review largely mirrors analogous precertification revisions to final EIRs, which do not require recirculation for public comment unless they add significant new information to the EIR, such as new information showing a significant environmental impact, a substantial increase in the severity of an environmental impact, or a considerably different feasible mitigation measure or project alternative that would clearly lessen the project's significant environmental effects. (§ 21092.1; Guideline 15088.5, subd. (a); *Laurel Heights Improvement Assn., supra*, at pp. 1120, 1126–1132.)

### 4

Further, we note the Resources Agency first promulgated Guideline 15164 in 1983. Since then, the Legislature has not modified CEQA to eliminate the addendum process. " ' "The Legislature is presumed to be aware of a long-standing administrative practice ... . If the Legislature, as here, makes no substantial modifications to the [statute], there is a strong indication that the administrative practice [is] consistent with the legislative intent." ' " (*Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2017) 3 Cal.5th 1118, 1156.)

### B

SOHO next contends the City failed to proceed in the manner required by law by failing to make new findings under section 21081 when it approved the addendum.

14

1

Section 21081 provides in part: "[N]o public agency shall approve or carry out a project for which an environmental impact report has been certified which identifies one or more significant effects on the environment that would occur if the project is approved or carried out unless both of the following occur: [¶] (a) The public agency makes one or more of the following findings with respect to each significant effect: [¶] (1) Changes or alterations have been required in, or incorporated into, the project which mitigate or avoid the significant effects on the environment. [¶] (2) Those changes or alterations are within the responsibility and jurisdiction of another public agency and have been, or can and should be, adopted by that other agency. [¶] (3) Specific economic, legal, social, technological, or other considerations, including considerations for the provision of employment opportunities for highly trained workers, make infeasible the mitigation measures or alternatives identified in the environmental impact report."

2

New findings under section 21081 are not required in connection with the approval of an addendum to an EIR. (*Fund for Environmental Defense v. County of Orange* (1988) 204 Cal.App.3d 1538, 1553.) "It must be remembered that an addendum is prepared where '(2) Only minor technical changes or additions are necessary to make the EIR under consideration adequate under CEQA; and (3) The changes to the EIR made by the addendum do not raise important new issues about the significant effects on the environment.' ([Guideline] 15164, subd. (a).) [¶] Nothing in the Code or the Guidelines suggests new findings are required when an addendum is prepared. Here the

15

'unavoidable adverse impacts' described in the addendum are the same as those described in the original EIR.  If the significant effects as found in the original EIR have been addressed by findings, and an addendum is only proper where no new significant environmental impacts are discovered, why should new findings be required in connection with preparation of an addendum?  The only purpose of findings is to address new significant effects to show the lead agency has properly considered ways in which to mitigate or avoid such effects."  (*Fund for Environmental Defense*, *supra*, at p. 1553; see *Citizens for a Megaplex-Free Alameda v. City of Alameda* (2007) 149 Cal.App.4th 91, 114–115 [CEQA does not require an agency to adopt findings when the agency determines a subsequent EIR is not required.]

IV

DISPOSITION

The judgment is affirmed.  The City and the Committee are awarded their appeal costs.

MCCONNELL, P. J.

WE CONCUR:

BENKE, J.

DATO, J.

16