Filed 11/18/20  Save Historic Roseville v. City of Roseville CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| SAVE HISTORIC ROSEVILLE, | C090754 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0042495) |
| v. | |
| CITY OF ROSEVILLE et al., | |
| Defendants and Respondents. | |

Plaintiff Save Historic Roseville (Historic Roseville) filed a petition for writ of mandate and complaint for declaratory relief (petition) seeking to enjoin defendants the City of Roseville (City) and Junction Station, LP (collectively defendants) from building a residential structure without further environmental review at the location the City's specific plan and associated environmental impact report designated a parking structure. Historic Roseville brought its petition following the City's approval of a development agreement, which occurred months after the City approved a permit and tentative subdivision map.  The issue in this appeal is whether the City's approval of the permit and tentative subdivision map constituted approval of the project under the California

1

Environmental Quality Act (the Act) or whether it was the subsequent approval of the development agreement that constituted the approval.

We agree with defendants that the City's approval of the permit and tentative subdivision map constituted approval of the project. Thus, Historic Roseville was required to file its petition within 35 days of the City's filing of a notice of exemption following those approvals. (See Pub. Resources Code,[1] §§ 21152, subd. (b), 21167, subd. (d); Cal. Code. Regs., tit. 14, § 15112, subd. (c)(2).) Because Historic Roseville failed to timely file its petition, its petition is barred by the statute of limitations. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In April 2009, the City amended its general plan to include the downtown specific plan (specific plan). The specific plan "encompasses 176-acres and includes the Historic Old Town, Vernon Street District and Royer Saugstad Parks. The Plan area is divided by 11 districts and emphasizes the addition of mixed-use and residential development. At buildout, the Plan area is expected to accommodate 900,000 square feet of new ground floor retail development, 1,020 new residential units, and a cumulative total of 4.4

---

[1] Further section references are to the Public Resources Code unless otherwise indicated. The Act is implemented by administrative regulations found at title 14, division 6, chapter 3 of the California Code of Regulations, and will be referred to as the Guidelines.

[2] We previously granted Historic Roseville's request to judicially notice portions of the City's municipal code relevant to its granting of permits. We now deny defendants' request to judicially notice prior litigation between the parties as irrelevant to the issues raised on appeal (see *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 295, fn. 21) and because the trial court did not consider the prior litigation when ruling on the current petition (see *People v. Peevy* (1998) 17 Cal.4th 1184, 1207-1208, fn. 4 [appellate courts generally do not take judicial notice of matter not presented to and considered by the trial court]).

million square feet.  The [specific plan] is the overriding policy document and contains the guiding principles for development of the plan area."

The specific plan provides:  "The focus in Historic Old Town is to promote a mix of entertainment/commercial/residential uses that will breathe life into Historic Old Town and create the desired aesthetic and intensity."  Further, "[t]he goal is to have Historic Old Town become a vibrant, energetic, exciting urban area that draws young professionals, empty nesters, and families who enjoy energetic urban settings to it because of the lifestyle and convenience offered by shops, entertainment, restaurants and residences being all in one place.  Historic Old Town will be highly walkable aided by this denser urban fabric."

One of Historic Old Town's five districts is the Historic Old Town Commercial District (district).  The specific plan provides:  "The focus of the [district] is to promote a unique mix of entertainment/commercial/residential uses that will breathe life into Historic Old Town and create the desired aesthetic and intensity.  The intent of this [d]istrict is to create a lively destination where nightclubs, comedy clubs, dinner theatres, bars, lounges, and restaurants are within walking distance of new residential uses . . . . [¶]  Higher density residential and commercial will be contextually designed, and alleys will provide exciting development opportunities for both commercial and residential uses.  An essential element to the success of this [d]istrict is good quality and diverse residential options and a range of housing products."

The specific plan designates two adjoining lots in the district as catalyst sites.  "When [catalyst sites are] developed as mixed-use or high density housing projects, they will serve as indicators of positive change in Downtown.  In order to facilitate early development of these sites, 'Pre-design' concepts have been developed . . . ."  "There are five 'Pre-Design' projects within the Specific Plan.  These projects have been designed to reflect the development standards of the Plan.  They take property that is currently underutilized and provide a project that supports the vision and is viable for development

3

by the private sector. These project sites are exempt from future entitlement review, as long as the construction drawings are substantially consistent with what has been developed. This approach is similar to the City's existing major project permit process, where an initial design concept is approved. Additionally, the Environmental Impact Report analyzes the development impacts at a 'project' level."

The Downtown Code, which was adopted by the City around the same time it adopted the specific plan provides: "Implementation of these projects will be exempt from the City's Design Review Process. To receive this exemption, the future project will need to follow the process outlined in . . . the Downtown Specific Plan, which is reflective of an administrative approval process, and the project shall be substantially consistent with the plans that are approved as part of the Specific Plan." "New construction and minor additions that are consistent with the provisions of the Specific Plan and Downtown Code will be approved via the Minor Design Review Permit process . . . ." (Bolding omitted.)

The specific plan specifies as a "pre-design" project that the district's adjoining catalyst sites become a parking structure given the accessibility of multiple destinations from the sites' location. "This structured parking will ultimately help to offset the on-site required parking for future development. The approach to using public realm parking to satisfy private parking needs is an essential tool that will help promote redevelopment within the area." "This project proposes to construct a four-level public parking structure providing approximately 400 parking stalls, with a variety of commercial uses [at the catalyst sites] totaling approximately 91,000 square feet. Access to the parking structure would be available from Pacific Street, preserving the Church Street frontage for retail uses on the ground floor . . . ." An environmental impact report analyzing the specific plan's impact on the environment was prepared and certified by the City.

In April 2016, the City allocated $3,760,000 from its affordable housing fund to build Junction Crossing, a 100 percent affordable housing community offering 80 units to

4

accommodate very-low and low-income households. Two years later, the City's planning commission approved a minor design review permit and a tentative subdivision map to allow construction of the housing community on the district's catalyst sites (the permit). The City filed a notice of exemption with the Placer County clerk indicating the housing community was exempt from the Act for multiple reasons. Historic Roseville's attorney and member Ryan Richards appealed the planning commission's approval of the permit and tentative subdivision map.

In June 2018, the city council denied Richards's appeal and approved the permit, as well as the tentative subdivision map. In so doing, the City recognized the specific plan requires approval of minor design review permits for projects that deviate from a "pre-design" plan. The City further found the housing community deviated from the "pre-design" project, but was "consistent with the design guidelines and regulations" of the City and "[t]he proposed improvement complies with all applicable standards and requirements of the [City], with the applicable goals, policies and objectives set forth in the General Plan and the . . . Specific Plan." Accordingly, the City determined the housing community "to be consistent with the goals, policies, and regulations of the General Plan [and] Specific Plan . . . ; and [¶] . . . eliminating the private/public parking garage that is included in the Pre-Design Project for [the catalyst sites] does not require an amendment to the . . . Specific Plan." The City again filed a notice of exemption with the Placer County clerk.

The notice of exemption summarized the project as follows: "A Minor Design Review Permit to allow a four-story, approximately 80,460 square feet, 80-unit affordable multi-family residential building, with associated parking. A Tentative Subdivision Map to allow the merging and resubdivision of 11 parcels, totaling approximately 1.38 acres, into two parcels (Parcel 1 = 0.07 acres, Parcel 2 = 1.31 acres), with right-of-way abandonments and dedications, consistent with Government Code

5

Section 66499.20.2." The notice of exemption further provides the project is exempt from the Act for multiple reasons.

In January 2019, the city council acting in its role as housing successor, passed a resolution approving a disposition and development agreement between the City and Junction Station, LP "for the development of 80 affordable housing units utilizing City and housing successor affordable housing funds and the sale of City property at" the catalyst sites (agreement). Following the City's approval of the agreement, it filed a notice of exemption with the Placer County clerk.

On February 7, 2019, Historic Roseville filed the instant petition. In it, Historic Roseville requested a declaration that the City violated the Act by approving the agreement without also adopting a negative declaration or an environmental impact report. Historic Roseville further requested an injunction setting aside the City's resolution adopting the agreement and enjoining defendants from developing the project.[3]

The trial court denied Historic Roseville's petition finding it untimely and the project it challenged exempt under the Act. As to the petition's timeliness, the court reasoned Historic Roseville's petition challenging the City's resolution adopting the agreement "makes clear that [its] primary objection is to the [project], and the fact that it will purportedly reduce available public parking . . . ." Because Historic Roseville's attack is to the project, the court reasoned Historic Roseville was required to challenge the City's earliest approval of the project, i.e., the permit and not the subsequent approval as contained in the agreement.

Historic Roseville appeals.

---

[3]     Historic Roseville brought a third cause of action irrelevant to this appeal.

6

DISCUSSION

Historic Roseville contends the City did not approve the project until it approved the agreement, and thus the notice of exemption the City filed after approval of the agreement triggered the statute of limitations under the Act. Defendants disagree and argue the project was approved, thus triggering the statute of limitations, when the City approved the permit and tentative subdivision map. We agree with defendants.

The Act "was enacted to advance four related purposes: to (1) inform the government and public about a proposed activity's potential environmental impacts; (2) identify ways to reduce, or avoid, environmental damage; (3) prevent environmental damage by requiring project changes via alternatives or mitigation measures when feasible; and (4) disclose to the public the rationale for governmental approval of a project that may significantly impact the environment." (*California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 382.)

When "a public agency decides that a project is exempt from [the Act] . . . and the public agency approves or determines to carry out the project, the agency may, file a notice of exemption." (Guidelines, § 15062.) If an agency files a notice of exemption with the county clerk's office, then a 35-day statute of limitation period applies. (§§ 21152, subd. (b), 21167, subd. (d); Guidelines, § 15112, subd. (c)(2); see *Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 498-499 (*Stockton*).) In the absence of a filing, a 180-day statute of limitations begins to run on "the date of the public agency's decision to carry out or approve the project." (§ 21167, subd. (a); Guidelines, § 15112, subd. (c)(5)(A).) "The notice shall be filed, if at all, after approval of the project." (Guidelines, § 15062, subd. (a).)

"Under [the Act], 'approval' of a project is 'the decision by a public agency which commits the agency to a definite course of action in regard to a project intended to be carried out by any person.' " (*Stockton*, *supra*, 48 Cal.4th at pp. 505-506, quoting Guidelines, § 15352.) "The exact date of approval of any project is a matter determined

7

by each public agency according to its rules, regulations, and ordinances.  Legislative action in regard to a project often constitutes approval." (Guidelines, § 15352, subd. (a).)

Historic Roseville, in essence, argues the City's approval of the permit was insufficient to constitute approval of the project because approval of the permit was not a discretionary act nor did it commit the City to the project.[4]  We disagree.

"A project is discretionary when an agency is required to exercise judgment or deliberation in deciding whether to approve an activity.  [Citation.]  It is distinguished from a ministerial project, for which the agency merely determines whether applicable statutes, ordinances, regulations, or other fixed standards have been satisfied.  [Citation.]  Ministerial projects are those for which 'the law requires [an] agency to act . . . in a set way without allowing the agency to use its own judgment . . . .'  [Citation.]  They involve 'little or no personal judgment by the public official as to the wisdom or manner of carrying out the project.  The public official merely applies the law to the facts as presented but uses no special discretion or judgment in reaching a decision.' " (*Protecting Our Water & Environmental Resources v. County of Stanislaus* (2020) 10 Cal.5th 479, 489.)

---

**4**     Historic Roseville further argues approval of the permit did not constitute approval of the project because the City did not have the power to approve the permit as worded. Specifically, Historic Roseville contends the project described in the permit was not consistent with the specific plan, making the City's approval of the permit an amendment to the specific plan, which it could not do through its permitting authority.  But the City made factual findings the project was consistent with the specific plan, thus its approval of the permit did not amend the specific plan.  To address this issue further would be to address a claim that is properly addressed only upon a petition attacking the City's approval of the permit, and not its approval of the agreement, which is at issue here.  (See *Stockton*, *supra*, 48 Cal.4th at pp. 506-507 [misuse of authority does not prevent a project's approval and subsequently filed notice of exemption from triggering the statute of limitations].)

The City's municipal code provides:  "A Minor Design Review Permit shall be obtained prior to the issuance of a building permit for minor improvements to multi-family residential and non-residential developments, including . . . [¶] . . . A project within the Downtown Specific Plan area which is consistent with the design guidelines and regulations outlined within the Downtown Code . . . ."  To approve a minor design review permit the approving authority "shall" make two findings:  1) The proposed improvement is minor in nature and is substantially compatible with the existing structure and complimentary to the adjacent land uses; and 2) The proposed improvement complies with all applicable standards and requirements of this title and with the applicable goals, policies and objectives set forth in the General Plan, the applicable Community Design Guidelines and the applicable specific plan."

Whether an improvement is "minor," "substantially compatible with existing structures," and "complimentary to the adjacent land uses" do not involve applying fixed standards.  Instead, these determinations require the use of personal judgment and the simultaneous weighing of several interests and facts.  Thus, the City's approval of the permit was a discretionary act.

Further, the City's approval of the permit committed the City to the project. Commitment occurs when an agency's action significantly furthers a project " 'in a manner that forecloses alternatives or mitigation measures that would ordinarily be part of [an environmental] review of that public project.' " (*Save Tara v. City of West Hollywood* (2008) 45 Cal.4th 116, 138.)  Courts should look to "whether, as a practical matter, the agency has committed itself to the project as a whole or to any particular features, so as to effectively preclude any alternatives or mitigation measures that [the Act] would otherwise require to be considered, including the alternative of not going forward with the project." (*Id*. at p. 139.)

Approval is not equivalent to an agency's "mere interest in, or inclination to support, a project." (*Save Tara v. City of West Hollywood*, *supra*, 45 Cal.4th at p. 136.)

9

On the other hand, an agency can "commit" to a project "as a practical matter" even before it has legally and/or irreversibly bound itself to move forward with the project. For example, "[a] public entity that, in theory, retains legal discretion to reject a proposed project may, by executing a detailed and definite agreement . . . and by lending its political and financial assistance to the project, have as a practical matter committed itself to the project." (*Save Tara*, *supra*, 45 Cal.4th at p. 135.) Moreover, an agency may be deemed to have committed to a project "even though further discretionary governmental decisions would be needed before any environmental change could occur." (*Id*. at p. 134.)

With approval of the permit, the City conferred an entitlement to Junction Station manifesting its intent to build the project. (See Guidelines, § 15352, subd. (b) ["With private projects, approval occurs upon the earliest commitment to issue or the issuance by the public agency of a discretionary contract, grant, subsidy, loan, or other form of financial assistance, lease, permit, license, certificate, or other entitlement for use of the project"].) Further, the City approved a tentative subdivision map at the time it approved the permit. This approval moved the City forward toward completing the project by creating parcels suitable for construction of the project. Such entitlements, effectively precludes consideration of any alternatives or mitigation measures the Act would otherwise require. (See *Save Tara v. City of West Hollywood*, *supra*, 45 Cal.4th at p. 139.) Thus, as a practical matter, the City committed itself to the project by approving the permit. Accordingly, the notice of exemption filed with the county clerk following that approval served to trigger the statute of limitations under the Act.

Historic Roseville attempts to avoid this conclusion by arguing the notice of exemption filed after approval of the permit is defective because it failed to adequately identify the project as approved by the agreement. Specifically, Historic Roseville contends the notice was invalid because it omitted that the City would sell City property

10

for development of the project and that the City intended the parking structure not be constructed. We disagree.

A notice of exemption must give a description of the project, the location, the finding that it is exempt and a "brief statement of reasons to support the finding." (Guidelines, § 15062, subd. (a)(1)-(a)(5).) "In *Ventura Foothill Neighbors v. County of Ventura* (2014) 232 Cal.App.4th 429 [181 Cal.Rptr.3d 421], the court found [a notice of determination] ineffective to trigger the 30-day statute of limitations because the project description failed to disclose a 15-foot increase in the building's height, and so the public had not received formal notice of that fact. Instead, the 180-day statute of limitations period applied, and began on the date that members were first informed of the height increase." (*Coalition for an Equitable Westlake/MacArthur Park v. City of Los Angeles* (2020) 47 Cal.App.5th 368, 379.)

Unlike *Ventura Foothill Neighbors*, Historic Roseville does not point to specific project descriptions contained in the agreement or its associated notice of exemption that differed from the project description in the notice of exemption following approval of the permit. The sale of City land to build the project did not change the project from that described in the notice of exemption filed after the City's approval of the permit and tentative subdivision map. Thus, the fact the City sold property cannot serve as a basis to invalidate the notice of exemption. Similarly, the project never purported to include a parking structure, thus the fact that the absence of a parking structure was disclosed during approval of the agreement does not invalidate the notice of exemption. Moreover, even if the notice of exemption did not properly disclose the fact a parking structure was not to be included at the catalyst sites, Historic Roseville's petition would still be untimely because the record reflects the City disclosed that fact when approving the permit. Therefore, to the extent the notice of exemption is invalid for failing to adequately describe the parking structure was no longer part of the project, the 180-day statute of limitation period was triggered from the City's approval of the permit. (See

11

§ 21167, subd. (a); Guidelines, § 15112, subd. (c)(5)(A).) Historic Roseville's petition was not filed within that time frame either.

Because the notice of exemption filed after the City approved the permit occurred after project approval and was valid, it triggered the statute of limitations under the Act. Consequently, Historic Roseville's petition challenging the City's project approval under the Act is untimely.[5]

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


/s/_____

Robie, J.


We concur:


/s/_____

Raye, P. J.


/s/_____

Blease, J.

---

[5]     Given this outcome, we deny defendants' request to judicially notice a provision of the City's municipal code pertaining to the sale of surplus property as irrelevant because it pertains to the substantive issue not reached in this appeal. For the same reason, we also deny Historic Roseville's request to judicially notice the train schedule at the train station located near the district.